1  DALE BISH, State Bar No. 235390
**WILSON SONSINI GOODRICH & ROSATI**
2  Professional Corporation
650 Page Mill Road
3  Palo Alto, CA  94304-1050
Telephone: (650) 493-9300
4  *dbish@wsgr.com*

5

THOMAS B. FIDDLER (*pro hac vice forthcoming*)
6  MORGAN S. BIRCH (*pro hac vice forthcoming*)
**WHITE AND WILLIAMS, LLP**
7  1650 Market Street
One Liberty Place, Suite 1800
8  Philadelphia, PA 19103
Tel: (215) 864-7000
9  *fiddlert@whiteandwilliams.com*
*birchm@whiteandwilliams.com*
10

11  *Attorneys for Plaintiff Google LLC*

12          **IN THE UNITED STATES DISTRICT COURT**

13          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

14  _____

15  GOOGLE LLC,                              :      Case No.
:
16            *Plaintiff,*                   :      No: _____
                                            :              5:25-cv-4033
17      v.                                   :
                                            :      **COMPLAINT**
18                                          :
POINT FINANCIAL, INC.                       :
19                                          :      **JURY TRIAL DEMANDED**
            *Defendant.*                     :
20                                          :
_____            :
21

22          Plaintiff Google LLC ("Google"), by and through undersigned counsel, avers as follows:

23                          <u>**NATURE OF ACTION**</u>

24          1.      Google commences this action for a temporary restraining order, preliminary

25  injunctive relief, permanent injunctive relief, compensatory damages, punitive damages, costs, and

26  interest for Point Financial's ("PFI") (i) intentional interference with Google's contractual

27

28

relationships with CNEX Labs, Inc. ("CNEX"), ███████████████████████████ ███ ("█████"), ███████████████████████████ ("█████"), and ███████████████████████ ███████████████ ("███") (█████ ████ and ███ are collectively referred to herein as the "Vendors"); (ii) violations of the Defend Trade Secret Act, 18 U.S.C. § 1831, et. seq.; and (iii) violations of California's Uniform Trade Secrets Act. *See* Cal. Civ. Code § 3426.

## PARTIES

2.      Plaintiff Google is a Delaware limited liability company with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California 94043.

3.      Google's sole member is Alphabet, Inc., a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043.  Accordingly, Google is a citizen of the State of Delaware and the State of California.

4.      Defendant PFI is an Arizona corporation with its principal place of business located at 3318 East Kachina Drive, Phoenix, Arizona 85044.  Point Financial is a citizen of the State of Arizona.

## JURISDICTION & VENUE

5.      This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 based on Google's claims for violations of the Defend Trade Secret Act, 18 U.S.C. § 1831, et seq. This Court has pendent jurisdiction over Google's state-law claim.  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of costs and interest.

6.      This Court has personal jurisdiction over PFI because PFI has substantial, continuous, and systematic contacts with California and has purposefully availed itself of the benefits and protections of this state by, among other things, owning real estate in California and

1  purposefully availing itself of the privilege of conducting financial activities within the State of

2  California through its business with CNEX Labs, Inc. ("CNEX") and others.

3      7.    PFI is also subject to personal jurisdiction in the state of California because it has

4  directed its activities described herein to Google, a citizen of the State of California, and caused

5  injury to Google in California.

6      8.    Venue is proper within the Northern District of California pursuant to 28 U.S.C.

7  § 1391(2) & (3) because a substantial part of the events or omissions giving rise to Google's claims

8  occurred in this district, and PFI is subject to personal jurisdiction in this district.

9                                              **FACTS**

10     9.    This case arises out of PFI's deliberate and unjustified interference with Google's

11 contractual relationships with the Vendors, who Google depends on to manufacture ██████████

12 used in its servers.

13     10.   Notwithstanding Google's express license and access rights in Section 10 of the

14 MPA, PFI has and continues to falsely inform the Vendors that its senior security interest in

15 CNEX's intellectual property, equipment and software are superior to Google's rights under the

16 MPA and that the Vendors are prohibited from continuing to manufacture the ████████ for

17 Google using the ████████████████

18     11.   As a result of PFI's fraudulent misrepresentations, the Vendors paused the

19 production of the ████████ using the ████████████ for an extended

20 period of time and refused to take new orders until Google agreed to enter into an indemnification

21 agreement.  It is still unknown if the Vendors will accept future orders, which if they decline to do

22 so as a result of PFI's intentional interference, will have a lasting and detrimental impact on

23 Google's current and future business operations, product launches, and product development.

24     12.   Additionally, in violation of Google's rights, PFI has threatened to sell equipment

25 containing Google's intellectual property and trade secrets to Google's competitors unless Google

26 pays PFI substantial sums of money for rights that it already paid for and obtained from CNEX in

27

28

the MPA. The unlawful disclosure of Google's confidential, proprietary, and trade secret information will cause Google to sustain immediate and irreparable harm and/or substantial damages.

### The Master Purchase Agreement

13.    Google is a multinational company known for its innovative approach to technology and its commitment to providing products and services that are beneficial to its users. *See* Ex. 3, ¶ 3.

14.    Billions of users of Google's products and services commonly store information on ███████████████████████████████ Google also stores its own company information in its data centers. *Id*. at ¶¶ 4 and 5.

15.    The security of the information on Google's ████ is paramount to Google's business operations. *Id*. at ¶ 6.

16.    In pursuit of its goal of increasing the security of information, Google's engineers began to ████████████████████████████████████████████ ████ *See* Ex. 2, ¶ 4.

17.    To assist in the design and manufacture of the ████████ Google contracted with CNEX Labs, Inc. ("CNEX"). *Id*. at ¶ 7.

18.    CNEX is a privately held company founded in 2013 and ceased doing business in April 2024. During its years of operation, CNEX designed proprietary hardware[1] and software[2] for the manufacture of computer chips.

19.    At all times relevant to this dispute, CNEX maintained its principal place of business at 2880 Stevens Creek Boulevard, Suite 108, San Jose, CA  95128.

20.    On August 2, 2016, Google and CNEX entered into a Master Purchase Agreement (the "MPA"). *See* Ex. 4.

---

[1]  Hardware refers to the physical components of a computer system.  It is the tangible parts that make up the structure of the device, as opposed to the intangible software that runs on it.
[2]  Software is a set of instructions, data, scripts, or programs used to operate computerized devices and execute specific tasks.

COMPLAINT    -4-    CASE NO. _____ 5:25-cv-4033

50027786v.1

21.     Under the MPA, CNEX agreed to ███████████████████████
████████████████████████████████████████████████████
██████ *Id.*

22.     ████████████████████████████████████████████
████████████████████████ *See* Ex. 2, ¶ 10.

23.     ████████████████████████████████████████████
██████████████████████████ *See* Ex. 2, at ¶ 11. ██████████████
███████████████████████████████████████████ *Id.* at ¶ 12.

24.     In the MPA, CNEX and Google agreed that █████████████████
████████████████████████████████████████████ *See* Ex. 4,
at Attachment C, § 2.

25.     After approximately three years of work and collaboration, on September 16, 2019,
Google and CNEX entered into Statement of Work No. 1171292 (the "SOW") for ████████████
███████ (the "██████████████"). *See* Ex. 2, at ¶ 13. *See also* Ex. 5.

26.     The SOW provided that CNEX ████████████████████████████
████████████████████████████████████████████████████
██████████ which are attached as Ex. A to the SOW.  *See* Ex. 2, at ¶ 14. *See also* Ex. 5, § 2.1.

27.     On July 27, 2020, Google and CNEX entered into the first Amendment to the SOW
("SOW Amendment").  *See* Ex. 2, at ¶ 15. *See also* Ex. 6. The SOW Amendment provided
████████████████████████████████████ *See* Ex. 2, at ¶ 16. *See also* Ex. 6.

28.     Under the SOW and its various subsequent Amendments, ████████████████
████████████████████████ *See* Ex. 2, at ¶ 17. *See also* Ex. 5.

29.     Under Section 10.1 of the MPA, CNEX ████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

*See* Exhibit 4, MPA, § 10.1.

30. ███████████████████████████████████████████

████████████████████████████████████████████████████

██████████████ *See* Ex. 2, at ¶ 18. *See also* Ex. 5 and 6.

31. ███████████████████████████████████████████

████████████████████████████████████████████████████

██████████ *Id.* at ¶ 19.

32. ███████████████████████████████████████████

██████████████████████ *Id.* at ¶ 20.

33. ███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ *See* Ex. 3, ¶ 11.

34. ███████████████████████████████████████████

██████████████████████ *Id.* at ¶ 12.

35.    Therefore, under the protections of a non-disclosure agreement (*see* Ex. 7) and the confidentiality provisions in the MPA (*see* Ex. 4, MPA at § 11), Google provided CNEX with proprietary, confidential, and trade secret information pertaining to its existing infrastructure ("Google's IP") to ensure that ████████████████████████████████████ *See* Ex. 3, at ¶ 13.

36.    This information included:

(a)   ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████ *Id.* at ¶ 14.

1    (b) █████████████████████████████████

2    ███████████████████████████████████████

3    ███ *Id.* at ¶ 14.

4    37.    Google's IP also included ██████████████████████

5    ████████████████████████████████████████████

6    *Id.* at ¶ 15.

7    38.    ████████████████████████████████████

8    ████████████████████████████ *Id.* at ¶ 16.

9    39.    ████████████████████████████████████

10   ███████████████████████████████ *Id.* at ¶ 17.

11   40.    ████████████████████████████████████

12   ████████████████████████████████████████████

13   ████████████████████████████████ *Id.* at ¶ 18.

14   41.    Google's ████████████████ include: (i) ███████████████ (ii)

15   ██████████████████████ (iii) ███████████████████████████

16   █████████████ (iv) ███████████████████████████████

17   ████████████████████ (v) █████████████████████████

18   ████████████████████████████████████████████

19   ███████████████████████████████████ (vi) █████████████

20   ███████████████████ (vii) ████████████████████████ and (viii)

21   ████████████████████████████████████████████

22   ████████████████████████ *Id.* at ¶ 19.

23   42.    ████████████████████████████████████

24   ██████████████████████████ *Id.* at ¶ 20.

25

26   ³ ████████████████████████████████████████

27   ████████████████████████████████████████████

28



43.    Therefore, Google's ███████████████ not only included ███████████████████████ but also ████████████████ ██████████████████████████████████ *Id.* at ¶ 21.

44.    As a result, the ██████████████████████ include Google's IP.  *Id.* at ¶ 22.

45.    ████████████████████████ ████████████████████████ ███████████ *Id.* at ¶ 23.

46.    ████████████████████████ ████████████████████████ ███████████ *Id.*

47.    Specifically, Google's ████████████ include: (i) ████████ ████████████████████████ (ii) ██████ ████████████████████████ (iii) ██████ ████████████████ and (iv) ████████████ ███████ *Id.* at ¶ 25.

48.    ████████████████████ ████████████████████████ *Id.* at ¶ 26.

49.    Google's ████████████ not only included ████████ ████████ but also confidential, proprietary, and trade secret information about █ ████████████████████████ ███████ *Id.* at ¶ 27.

[4] ████████████████████████████████ ████████████████████████████████ █████████████████████

50. The ███████████████████████████████ include Google's IP. *Id.* at ¶ 28.

51. After sharing ██████████████████ with CNEX, Google "standardized" (i.e., made public through open-source) certain aspects of ████████████████. *Id.* at ¶ 29. However, other aspects, such as Google's ████████████████████, which ██████████████████████████████████, remain proprietary to Google. Similarly, the █████████████████████████████ ████████████████████ remains confidential. *Id.*

52. Google also provided CNEX with confidential, proprietary, and trade secret ████████████████████ ████████████████████ ████████████████████████████████ ████████████████ *Id.* at ¶ 30.

53. This ████████████ enables Google to ████████████████ ████████████████████████████████ *Id.* at ¶ 31.

**CNEX Begins to Work on the ████████████████**
**Utilized to Manufacture and Test the ████████**

54. With Google's IP in hand and the specifications set forth by Google in the SOW and the SOW Amendment, CNEX began to design the █████████████ *Id.* at ¶ 32.

55. At each step in the design process, CNEX reported back to Google with its progress. *Id.* at ¶ 33.

56. This process also necessitated Google to test run certain applications that were included in the ██████████████████ on its system to ensure ████████████████ ████████████████████ *Id.* at ¶ 34.

57.     During these test runs, Google uncovered multiple issues with CNEX's design and software.[5] *Id.* at ¶ 35.

58.     To rectify these issues, Google, worked with CNEX to (i) ███████████ ███ (ii) ███████████████████████████ (iii) ██████████ ███████████████████████ and (iv) ███████ ██████████████████████████████████████ ██████ *Id.* at ¶ 37.

59.     As a result, the final design of the ███████████████ and the ███████████ contain Google's IP, which is inextricably intertwined with CNEX's work product. *Id.* at ¶ 38.

60.     CNEX acknowledged that its ██████████████ incorporated Google's IP and could not be shared without Google's explicit permission. *Id.* at ¶ 39. In March 2022, after years of collaborative work, CNEX asked Google for permission to share the ███ ███████ within the █████████████ with another one of its customers, █████████████ to demonstrate its design capabilities. *Id.* at ¶ 40.

61.     Google declined the request so as to protect its IP and protect its distinct competitive advantage. *Id.* at ¶ 41.

62.     As the unauthorized disclosure of any of Google's IP would cause immediate and irreparable harm to Google, Google ensured that the MPA specifically provided that ███████ ████████████████ *Id.* at 42. *See* Ex. 4, MPA at § 11.3 ("████████████████ ██████████████████████████████████████████████ ████████████████").

63.     Although CNEX designed the ███████████████████ it did not manufacture the ████████ itself. *See* Ex. 2, at ¶ 21.

---

[5] Over the course of the █████████ Google identified and resolved at least 844 issues related to CNEX's design and software. *See* Ex. 3, at ¶ 36.

64. Instead, CNEX received Google's orders for the production and then relayed those orders to the Vendors, who manufactured, tested, and assembled using the ████████ using the ████████████████ *Id*. at ¶ 22.

65. Google entered into direct contracts with Vendors for their work in manufacturing the ████████ *Id*. at ¶ 23.

66. On September 29, 2021, Google and ████ entered into a ████████████ Agreement for the ████████████ including the ████████ *See* Ex. 2, at ¶ 24. *See also* Ex. 8 at §§ 1.5 and 3.1-3.7. The ████████ Agreement ████████████ ████████████████ *See* Ex. 2, at ¶ 25. *See* Ex. 8 at § 14.

67. On August 10, 2022, Google entered into an ████████ Agreement with ████ *See* Ex. 2, at ¶ 26. *See also* Ex. 9. Under the ████████ Agreement, ████████ ████████████ *Id*.

68. On May 24, 2024, Google entered into a ████████ Agreement with ██. *See* Ex. 2, at ¶ 27. *See also* Ex. 10. Under the ████████ Agreement, ████████ ████████████ *Id*.

**Google Bargained and Paid for Protections to Enable it to
Continue to Manufacture the ████████ if CNEX Ceased to Operate.**

69. At the time Google and CNEX entered into the MPA, CNEX was a relatively new, start-up company. *See* Ex. 2, at ¶ 28.

70. Having invested ████████████ into the ████████ Google wanted to ensure it could continue to use the ████████████████ ████████████████████ ██ *Id*. at ¶ 29.

71. Accordingly, at the time Google signed the MPA in 2016, Google ████████ ████████████████████ ████████████████████ ████████ *See* Ex. 2, at ¶ 30. *See also* Ex. 4, MPA at § 10.4(A).

72.    The MPA also provided Google with the ███████████████████ ██████████████████ *See* Ex. 4.

73.    Under the MPA, the ██████████████████ includes:

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

*Id.* § 1.15.

74.    Simply put, the ███████████████████ is the ███████████ ██████ of the ██████████ using the ██████████████████ *See* Ex. 2, at ¶ 31.

75.    In accordance with Section 10.4(A) of the MPA, ██████████████ ███████████████████████████████████████ *Id.*

76.    To further protect Google's interests, Section 10.4(B) of the MPA provides that ██ ███████████████████████████████████████ ████████████████ *Id.* § 10.4(B)(3).

77.    Effective upon ███████████████████████

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

*See* Ex. 4, MPA, § 10.4(C) (emphasis added).

78.    Upon the ██████████████████

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

1

███████████████████████████████████

2

*See* Ex. 4, MPA, § 10.4(D) (emphasis added).

3

4       79.     These bargained-for terms were a material part of Google's decision to enter into

5   the MPA with CNEX in 2016. *See* Ex. 2, at ¶ 33.

6       80.     If CNEX had not ████████████████████████████████

7   ██████████████ and ████████████████████████████████

8   ████████████████████ Google would not have contracted with CNEX.  *Id*. at ¶ 34.

9                          **CNEX Ceases its Operations**

10      81.     On April 12, 2024, CNEX ceased its worldwide operations.[6]

11      82.     CNEX notified Google of this fact two days later on April 15, 2024. *See* Ex. 2, ¶

12  35. *See also* Ex. 12.

13      83.     After the cessation of CNEX's business, Google obtained the release of the ████████

14  ████████████████████████ *See* Ex. 4, § 10.4(B).

15      84.     Also, upon the cessation of CNEX's business, Google ████████████████

16  ████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████

18  ████████████████████████████████ as described in Section 10.4(C) of

19  the MPA.  *See* Ex. 4, § 10.4(C).

20      85.     Google also obtained the ████████████████████████████████

21  ████████████████████████████████████████████████

22  ████████████  *See* Ex. 4, § 10.4(D).

23      86.     Therefore, upon the cessation of CNEX's operations, ████████████████

24  ████████████████████████████████████████████████

25

26
     _____

27  [6]  On December 11, 2024, CNEX filed for bankruptcy in the United States Bankruptcy Court for
     the Northern District of California, No. 5:24-bk-51889.

28

████████████████████████████████████████████████████████

*See id.*

### PFI's Interference with Google's Contractual Relationships

87.    On June 24, 2024, PFI advised Google that CNEX defaulted on its financial obligations to PFI under the terms of the PFI Loan. *See* Ex. 11.

88.    PFI asserted that it maintained a security interest in all CNEX's assets, including equipment, software, accounts receivable, royalties, and general intangibles, including the ████ ████████████████████ and the ██████████████████████ used to ██████ ████████████ *Id*.

89.    By email dated July 1, 2024, Google informed PFI that "CNEX and Google have been and continue to proceed as agreed under Section 10.4 of the Master Purchase Agreement." *See* Ex. 13.

90.    On August 22 and 23, 2024, PFI's Chief Operating Officer and Vice President, Eric Koontz, emailed the Vendors, with which Google has existing contractual relationships, falsely informing the Vendors that they are not permitted to use any equipment or software (i.e., the ████████████████████████ or the ████████████████████ used to manufacture the ████████) belonging to CNEX to fulfill any present or future orders for Google. *See* Ex. 14.

91.    PFI further threatened the Vendors by asserting, without any factual or legal basis, that the Vendors' use of the ████████████████████ to fulfill Google orders violated PFI's rights, constitutes wrongful conversion of its property, and is legally actionable. *Id*.

92.    Despite Google's request to PFI to cease and retract these false accusations, PFI reiterated its threats to the Vendors, most recently on January 13, 2025. *Id*. *See also* Ex. 15.

93.    On September 10, 2024, Google's counsel advised PFI's counsel that under the MPA, Google ██████████████████████████████████████████████

1   ███████████ to manufacture the ████████ *See* Exhibit 16 (Letter dated September 10, 2024

2   Letter from T. Fiddler to M. Speth and D. Guffey).

3       94.    Google's counsel also advised PFI's counsel that under the MPA, Google ██

4   ██████████████████████████████████████████████████████████████████████████

5   ██████████████████████████████████████████████████████████████████████████

6   ███████████████████████████████ *Id.*

7       95.    CNEX's bankruptcy stalled PFI's efforts to unlawfully interfere with Google's

8   bargained-for license rights to the ██████████████████████ and its access rights to

9   the ██████████████████

10      96.    However, on April 24, 2025, the bankruptcy court granted PFI relief from the

11  automatic stay, effective May 8, 2025. *See* Ex. 17.

12      97.    Based on PFI's pre-bankruptcy threats set forth in a letter dated October 15, 2024,

13  from PFI's President, Michael J. O'Malley, Google believes that PFI intends to sell the ██████

14  ████████████ — into which Google's IP is inextricably intertwined — to "Google's

15  competitors in ██████████ (i.e., ██████████████████ etc.)." *See* Ex. 18.

16      98.    Without the use of the ████████████████████████████████████████

17  ████████████ Google will be unable to complete the ██████████ in which it has already

18  invested ██████████████ *See* Ex. 2, at ¶ 39.

19      99.    PFI is aware of Google's rights to the ██████████████████ and its

20  contractual relationships with the Vendors. *See e.g.* Ex. 14 and 15.

21      100.   Upon information and belief, PFI has interfered with Google's contractual

22  relationships to attempt to force Google to pay for rights that it already bargained and paid for and

23  obtained from CNEX under the MPA.

24      101.   As a direct and proximate result of PFI's conduct, in September 2024, ████████

25  informed Google that it would ████████████████████████ based on the threats in PFI's

26  letter.  *See* Ex. 2, at ¶ 40.

27

28

102. In response, Google was forced to expend valuable engineering time and resources to meet with the Vendors to provide assurances that Google has the right to ███████████ ██████████████████████████████████████ *Id.* at ¶ 41.

103. Google was also forced to research and develop potential alternative methods to provide the same ███████████████████ provided by the ███████████ *Id.* at ¶ 42.

104. As a result of PFI's actions and Google's inability to use the █████████████ ██████████████████████████████████ Google has and will continue to sustain irreparable harm and substantial damages, including but not limited to (i) ███████████████ ██████████████████████ (ii) ██████████████████████████████████ (iii) ████████████████████████████████████████████████████████████ ████████████████████████████████████████████ (iv) █████████ ████████████████████████████████████████████████████████████ ████████████████████████ and (v) █████████████████████████████ ████████████████████████████████████████████████████████████

*See* Ex. 2, at ¶ 43 and Ex. 3, at ¶ 43.

**PFI Threatens to Sell Google's IP
to Google's Competitors**

105. In addition to threatening the Vendors and demanding that they stop using the ███████████████████████ PFI has threatened to sell CNEX's assets, including the ████████████████████

106. As outlined above, Google's IP is inextricably interwoven CNEX's intellectual property in the ██████████████████████████

107. Google has informed PFI of these facts and objected to PFI's threatened sale.

108. Rather than acknowledge these facts, PFI has demanded ████████ for the ██████████████████████ to which Google already ███████████████████ ██████████████████████ *See* Ex. 18.

109.    Despite PFI's knowledge of Google's irrevocable rights PFI filed a Motion for Relief from the Automatic Stay with the bankruptcy court to take possession and liquidate CNEX's assets, including the ████████████████████

## COUNT I
### Tortious Interference with Contractual Relationships

110.    Google incorporates paragraphs 1 through 109 as though fully set forth herein.

111.    Google has existing contracts with CNEX and the Vendors.

112.    Google's contracts with CNEX are memorialized in the MPA and the SOWs relating to the ████████ *See* Ex. 4.

113.    Google and ████ are parties to the ██████████ Agreement dated September 29, 2021. *See* Ex. 8.

114.    Google and ████ are parties to the ██████████ Agreement dated August 10, 2022. *See* Ex. 9.

115.    Google and ███ are parties to the ██████████ Agreement dated May 24, 2024. *See* Ex. 10.

116.    Pursuant to these contracts, the Vendors ████████████████ Google's ██████████ using the ██████████████████

117.    In return for the Vendors services, Google ██████████████████

118.    PFI is aware of the ██████████████ to the ████████████ ██████ that Google ██████████ under the MPA and SOWs. *See* Ex. 16 (Letter dated September 10, 2024 Letter from T. Fiddler to M. Speth and D. Guffey).

119.    PFI is also aware of Google's contracts with the Vendors, as is demonstrated by its repeated emails telling them to cease all work for Google using the ██████████████████ ████ *See e.g.* Ex. 14 and 15.

120.    PFI's threats are designed to abrogate Google's ██████████████ the ████████████████████ and induce the Vendors to breach their contracts with Google.

121.    The content of the August 2024 and January 2025, emails from PFI to the Vendors demonstrate PFI's intended effect. *See* Ex. 14 ("You are hereby notified that the continued use of any equipment or software belonging to CNEX…is a violation of [PFI's] rights as secured party and wrongful conversion of such property actionable under US Law. … [PFI] intends to assert and enforce its rights in CNEX assets to the full extent of the law.").

122.    PFI's initial threats had their intended effect: to disrupt Google's contractual relationships with the Vendors.

123.    Notwithstanding Google's ▮▮▮▮▮▮▮▮▮ in Section 10 of the MPA, PFI's caused ▮▮▮ to ▮▮▮▮▮▮▮▮▮▮▮▮ using the ▮▮▮▮▮ ▮▮▮▮▮▮▮▮ and refused to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ *See* Ex. 4.

124.    PFI's Motion for Relief from Stay makes clear its intent to renew its disruption of Google's contracts with the Vendors. *See* Ex. 19.

125.    Google has suffered damages from PFI's conduct and will continue to suffer damages if PFI persists in threatening the Vendors if they continue to use the ▮▮▮▮▮ ▮▮▮▮▮ to ▮▮▮▮ the ▮▮▮▮▮ for Google.

126.    When PFI threatened the Vendors in 2024, the Vendors paused all ▮▮▮ ▮▮▮▮▮▮ for four months, which caused a delay in the completion of the ▮▮▮ ▮▮▮.

127.    Moreover, as a direct and proximate result of PFI's actions, Google has and will continue to sustain irreparable harm and substantial damages, including but not limited to (i) ▮▮▮▮▮▮▮▮▮▮▮▮▮ (ii) ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ (iii) ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮

1   ███████████████████ and (iv) damage to Google's reputation as a contracting party with the

2   Vendors whose services are essential not only to the ████████████ but several others.

3       128.    PFI's conduct in interfering with Google's contractual relationships with the

4   Vendors was deliberate, intentional, willful, reckless and outrageous so as to warrant the

5   imposition of punitive damages.

6       WHEREFORE, Google requests this Court to enter a temporary restraining order,

7   preliminary injunction, and permanent injunction prohibiting PFI from interfering with Google's

8   relationships with the Vendors.  Google further requests this Court to enter judgment in its favor

9   and against PFI for compensatory damages in excess of $75,000, punitive damages, interest, costs,

10  and such other relief as this Court deems appropriate.

### COUNT II
### Violations of the Defend Trade Secret Act,
### 18 U.S.C. § 1831, et. seq.

13      129.    Google incorporates paragraphs 1 through 128 as though fully set forth herein.

14      130.    Google is the owner of valuable Intellectual Property, which includes proprietary,

15  confidential information and trade secrets.

16      131.    Google's IP includes valuable trade secrets that give it an advantage over its

17  competitors.

18      132.    Google's trade secrets include ████████████████████████

19  ████████████████████████████████████████████████

20  ████████████████████████████████████████████████

21  ████████████████████████████████████████████████

22  ██████████████████████

23      133.    Google's IP includes ██████████████████████████████

24  ████████████████████████████████████████████████

25  ████ including: (a) ████████████████████████████████████ (b)

26  ████████████████████████████████████████████████

27

28

1    ███████████████████████ (c) █████████████████████

2    ████████████ and (d) ████████████████████████████

3    ██████████████████████████████████ *See* Ex. 3, at ¶¶

4    13-31.

5    134.    As explained in detail above, Google's IP is wholly integrated and inextricably

6    intertwined within the █████████████████ including the ████████████████

7    ██████████████ *See also, Id.*

8    135.    Google has spent billions of dollars to develop and set itself apart from its

9    competitors in all facets of its business but particularly in its technology, cloud hosting, and

10    computing.

11    136.    Google's trade secrets are confidential and not known to others in the technology

12    industry, and those trade secrets give Google an advantage over its competitors.

13    137.    In violation of Google's express bargain and paid for rights under the MPA (*see*

14    Ex. 4, § 10.4(C)) on multiple occasions, including as recently as March 10, 2025, in a filing made

15    with the bankruptcy court, PFI has stated its intent to sell CNEX's ████████████████

16    — including the ███████████████ which contain Google's IP and trade secrets.

17    *See* Ex. 19.

18    138.    Google has informed PFI on multiple occasions that a sale of any such identified

19    assets will be in violation of Google's IP rights. *See e.g.* Ex. 16.

20    139.    If PFI is permitted to sell certain CNEX's assets which include Google's IP,

21    Google, along with its billions of users, will suffer immediate and irreparable harm.

22    140.    This harm will include but is not limited to: (i) Google's loss of its competitive

23    advantage in the marketplace; (ii) the immediate exposure of security measures thereby

24    compromising Google's █████████████████████ as well as the █████████

25    ████████████ and (iii) lost time and resources devoted to the research and development of

26    Google's cutting-edge security features.

27

28

COMPLAINT                                    -20-         CASE NO. _5:25-cv-4033_____

50027786v.1

141.   PFI does not maintain any legal or equitable right to disclose Google's IP to Google's competitors.

142.   PFI will not sustain any harm if it is enjoined from disclosing Google's IP to Google's competitors.

143.   The public interest weighs in favor of this Court enjoining PFI from disclosing Google's IP to Google's competitors.

WHEREFORE, Google requests this Court to enter a temporary restraining order, preliminary injunction, and permanent injunction prohibiting PFI from selling the assets containing Google's IP. Google further requests this Court to enter judgment in its favor and against PFI for compensatory damages in excess of $75,000, punitive damages, interest, costs, and such other relief as this Court deems appropriate.

## COUNT III

### Violations of the California's Uniform Trade Secrets Act.
### Cal. Civ. Code § 3426, et seq.

144.   Google incorporates paragraphs 1 through 143 as though fully set forth herein.

145.   Google is the owner of valuable Intellectual Property, which includes proprietary, confidential information and trade secrets.

146.   Google's IP includes valuable trade secrets, that are not known to others in the technology industry, that give it an advantage over its competitors.

147.   Google's trade secrets include █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

148.   Google's IP includes █████████████████████████████████████████████████████████████████████

█████ including: (a) ████████████████████████████████████ (b)
████████████████████████████████████████████████████████████
████████████████████████████ (c) ███████████████████████████
████████████████ and (d) ████████████████████████████████████
████████████████████████████████████████ *See* Ex. 3, at ¶¶
13-31.

149.    Google's IP is wholly integrated and inextricably intertwined within the ████████████████████████████ including the ████████████████████████ ████ *Id.*

150.    Google has spent billions of dollars to develop and set itself apart from its competitors in all facets of its business but particularly in its technology, cloud hosting, and computing.

151.    In violation of Google's express bargain and paid for rights under the MPA (*see* Ex. 4, § 10.4(C)) on multiple occasions, including as recently as March 10, 2025, in a filing made with the bankruptcy court, PFI has stated its intent to sell CNEX's ████████████████ — including the ████████████████████ which contain Google's IP and trade secrets. *See* Ex. 19.

152.    Google has informed PFI on multiple occasions that a sale of any such identified assets, including the ████████████████████ will be in violation of Google's IP rights. *See e.g.* Ex. 16.

153.    If PFI is permitted to sell certain CNEX's assets which include Google's IP, Google, along with its billions of users, will suffer immediate and irreparable harm.

154.    This harm will include but is not limited to: (i) Google's loss of its competitive advantage in the marketplace; (ii) the immediate exposure of security measures thereby compromising Google's ████████████████████████ as well as the ████████

████████ and (iii) lost time and resources devoted to the research and development of Google's cutting-edge security features.

155.     PFI does not maintain any legal or equitable right to disclose Google's IP to Google's competitors.

156.     PFI will not sustain any harm if it is enjoined from disclosing Google's IP to Google's competitors.

157.     The public interest weighs in favor of this Court enjoining PFI from disclosing Google's IP to Google's competitors.

158.     WHEREFORE, Google requests this Court to enter a temporary restraining order, preliminary injunction, and permanent injunction prohibiting PFI from selling the assets containing Google's IP.  Google further requests this Court to enter judgment in its favor and against PFI for compensatory damages in excess of $75,000, punitive damages, interest, costs, and such other relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff Google requests a jury on all issues presented in this matter.

Dated: May 8, 2025                    Respectfully submitted,

                                      **WILSON SONSINI GOODRICH & ROSATI**
                                      Professional Corporation

                                      By: */s/ Dale R. Bish*
                                           Dale R. Bish

                                      *Attorneys for Plaintiff Google LLC*