Exhibit 1

To allow for consistency in the exhibits across the Complaint and the contemporaneously filed Motion for a Temporary Restraining Order and Preliminary Injunction, Exhibit 1 to the Complaint has been intentionally left blank.

Exhibit 2

1  DALE BISH, State Bar No. 235390
   **WILSON SONSINI GOODRICH & ROSATI**
2  Professional Corporation
   650 Page Mill Road
3  Palo Alto, CA 94304-1050
   Telephone: (650) 493-9300
4  *dbish@wsgr.com*

5

6  THOMAS B. FIDDLER (*pro hac vice forthcoming*)
   MORGAN S. BIRCH (*pro hac vice forthcoming*)
7  **WHITE AND WILLIAMS, LLP**
   1650 Market Street
8  One Liberty Place, Suite 1800
   Philadelphia, PA 19103
9  Tel: (215) 864-7000
   *fiddlert@whiteandwilliams.com*
10 *birchm@whiteandwilliams.com*

11 *Attorneys for Plaintiff Google LLC*

12

13

14                    UNITED STATES DISTRICT COURT

15                   NORTHERN DISTRICT OF CALIFORNIA

16 GOOGLE, LLC,                        ) Case No.:
                                       )
17            Plaintiff,               ) **DECLARATION OF MUKUL KELKAR**
                                       ) **IN SUPPORT OF GOOGLE LLC'S**
18       v.                            ) **COMPLAINT AND MOTION FOR A**
                                       ) **TEMPORARY RESTRAINING ORDER**
19 POINT FINANCIAL, INC.,              ) **AND PRELIMINARY INJUNCTION**
                                       )
20            Defendant.              )
                                       )
21                                     )
                                       )
22                                     )
                                       )
23                                     )
                                       )
24 _____)

25

26

27

28

KELKAR DECL. ISO GOOGLE'S COMPLAINT AND                    CASE NO._____
MOTION FOR A TRO AND PRELIMINARY INJUNCTION

1    I, Mukul Kelkar, declare under the penalties of perjury, as follows:

2        1.    I began my employment at Google LLC ("Google") in December 2020 as Global

3    Commodity Manager.

4        2.    From August 2022 through April 2024, I managed the relationship between

5    Google and CNEX Labs, Inc. ("CNEX").

6        3.    As part of my role, I worked with CNEX's executive, engineers, and staff to

7    ensure timely delivery of their services to Google.

8        4.    Starting in 2019, Google began to design a ████████████ to increase the

9    security for thousands of its ██████████████████████████████████

10   ██████████ around the globe.

11       5.    These storage devices and servers are integral to Google's entire operations,

12   including its ability to securely store its own data and the data of its billions of users and perform

13   other computer functions, such as generative artificial intelligence.

14       6.    In pursuit of its goal of increasing the security of information, Google's engineers

15   began to ████████████████████████████████████████████

16   ████.

17       7.    To assist in the design and manufacture of the ████████, Google contracted

18   with CNEX Labs, Inc. ("CNEX").

19       8.    On August 2, 2016, Google and CNEX entered into a Master Purchase Agreement

20   (the "MPA"). *See* Ex. 4.

21       9.    Under the MPA, CNEX agreed to ████████████████████████

22   ████████████████████████████████████████████████████

23   ████████. *Id.*

24       10.   ████████████████████████████████████████

25   ████████████████████████.

26       11.   ████████████████████████████████████████

27   ████████████████████████.

28

KELKAR DECL. ISO GOOGLE'S COMPLAINT AND        -1-        CASE NO._____
MOTION FOR A TRO AND PRELIMINARY INJUNCTION

1    12.    ███████████████████████████████████

2    ████████.

3    13.    After approximately three years of work and collaboration, on September 16,

4    2019, Google and CNEX entered into Statement of Work No. 1171292 ("SOW") for ███████

5    ████████████████████████████.  *See* Ex. 5.

6    14.    The SOW provided that CNEX ████████████████████████████

7    ████████████████████████████████████████████

8    ████████, attached as Exhibit A to the SOW.  *See* Ex. 5, § 2.1.

9    15.    On July 27, 2020, Google and CNEX entered into the Amendment 1 to Statement

10    of Work No. 1171292 ("SOW Amendment").  *See* Ex. 6.

11    16.    The SOW Amendment provided ██████████████████████████.

12    *Id.*

13    17.    Under the SOW and its various subsequent Amendments, ████████████████

14    ████████████████.  *See* Ex. 5, § 5.2 and Ex. D, § 2.

15    18.    ██████████████████████████████████████

16    ████████████████████████████████████████████

17    ████████████.  *See* Ex. 5 and 6.

18    19.    ██████████████████████████████████████

19    ████████████████████████████████████████████

20    ████████.

21    20.    ██████████████████████████████████████

22    ████████████.

23    21.    Although CNEX designed the ████████████████████, it did not

24    manufacture the ████████ itself.

25    22.    Instead, CNEX received Google's orders for the production and then relayed

26    those orders to the Vendors, who manufactured, tested, and assembled the ████████ using

27    the ████████████████████.

28

1      23.    Google entered into direct contracts with Vendors for their work in manufacturing

2    the Security Chip.

3      24.    It is my understanding, on September 29, 2021, Google and ████ entered into a

4    ████████ Agreement for the ████████████████ including the ██████████.

5    *See* Ex. 8 at §§ 1.5 and 3.1-3.7.

6      25.    The ██████████ Agreement ████████████████████████████████████████

7    ██████████████. *See* Ex. 8 at § 14.

8      26.    It is my understanding, on August 10, 2022, Google entered into an ██████

9    ████████ Agreement with ████. *See* Ex. 9. Under the ██████████ Agreement, ████████

10   ████████████████████████████.

11     27.    It is my understanding, on May 24, 2024, Google entered into a ████████████

12   Agreement with ████  *See* Ex. 10. Under the ██████████ Agreement, ████████████████

13   ████████████████████████.

14          **Google Bargained and Paid for Protections to Enable it to Continue**
           **to Manufacture the ████████████ if CNEX Ceased to Operate**

15

16     28.    At the time Google and CNEX entered into the MPA, CNEX was a relatively

17   new, start-up company.

18     29.    Having invested ████████████████ into the ██████████, Google

19   wanted to ensure it could continue to use the ████████████████ to ████████

20   and ████ the ████████████████████████████████████████████████████

21   ████.

22     30.    Accordingly, at the time Google signed the MPA in 2016, Google ██████████

23   ████████████████████████████████████████████████████████████

24

25

26

27

28

1    ███████████████████████████████████████████████████████

2    ███████████" Ex. 4, MPA at § 10.4(A).

3        31.    Simply put, the ███████████████████████ is the ████████████

4    ████████ of the ████████████ using the ██████████████████████.

5        32.    In accordance with Section 10.4(A) of the MPA, ████████████████████

6    ███████████████████████████████████████████████████████.

7        33.    The bargained-for terms in Section 10 of the MPA were a material part of

8    Google's decision to enter into the MPA with CNEX in 2016.

9        34.    If CNEX had not ████████████████████████████████████████

10   ████████████████████ and ███████████████████████████████████████

11   ██████████████████████, Google would not have contracted with CNEX.

12                          **CNEX Ceases its Operations**

13       35.    On April 15, 2024, I received emails from CNEX's VP of Sales indicating that

14   CNEX had ceased operations. *See* Ex. 12 ("I wanted to let you two know that as of last Friday

15   CNEX Labs has officially shut down. Long story short our venture debt provider took actions

16   that eliminated any runway in front of us.").

17       36.    On or around August 22 and 23, 2024, Point Financial's COO and Vice President,

18   Eric Koontz, copied me on emails to the Vendors claiming that "the continued use of any

19   equipment or software belonging to CNEX, including without limitation the following described

20   equipment, is a violation of [Point Financial's] rights as secured party and wrongful conversion

21   of such property actionable under U.S. Law. *See* Ex. 14.

22       37.    Point Financial further threatened the Vendors by asserting, without any factual or

23   legal basis, that the Vendors' use of the ██████████████████████ to fulfill Google

24

25

26

27

28

1    orders violated Point Financial's rights, constitutes wrongful conversion of its property, and is

2    legally actionable. *Id.*

3         38.    Despite Google's request to Point Financial to cease and retract these false

4    accusations, Point Financial reiterated its threats to the Vendors, most recently on January 13,

5    2025. *Id. See also* Ex. 15.

6         39.    Without the use of the ████████████████████████████████

7    ████████, Google will be unable to complete the ██████████, in which it has already

8    invested ██████████████.

9         40.    As a direct and proximate result of Point Financial's conduct, in September 2024,

10   ████ informed Google that it would ████████████████████ based on the threats

11   in Point Financial's letter.

12        41.    In response, Google was forced to expend valuable engineering time and

13   resources to meet with the Vendors to provide assurances that Google has the right to ████████

14   ████████████████████████████████████████.

15        42.    Google was also forced to research and develop potential alternative methods to

16   provide the same ██████████████████ provided by the ██████████.

17        43.    As a result of Point Financial's actions and Google's inability to use the

18   ████████████████████████████████████, Google has and

19   will continue to sustain irreparable harm and substantial damages, including but not limited to (i)

20   ██████████████████████████████; (ii) ██████████████

21   ████████████████████████████████

22   ██████████████████████████; (iii) ██████████████████

23   ████████████████████████████████████

24

25

26

27

28

1    ██████████████ ; and (iv) damage to Google's reputation as a contracting party with the

2    Vendors whose services are essential not only to this and other planned projects.

3        I declare under penalty of perjury, to the best of my knowledge, under the laws of the

4    United States of America that the foregoing is true and correct.

5

6                                           Signed by:

7    Executed on May 7, 2025              *Mukul kelkar*
                                          8A44D164BA4845B...
8                                          _____
                                          Mukul Kelkar

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 3

1   DALE BISH, State Bar No. 235390
    **WILSON SONSINI GOODRICH & ROSATI**
2   Professional Corporation
    650 Page Mill Road
3   Palo Alto, CA  94304-1050
    Telephone: (650) 493-9300
4   *dbish@wsgr.com*

5

6   THOMAS B. FIDDLER (*pro hac vice forthcoming*)
    MORGAN S. BIRCH (*pro hac vice forthcoming*)
7   **WHITE AND WILLIAMS, LLP**
    1650 Market Street
8   One Liberty Place, Suite 1800
    Philadelphia, PA 19103
9   Tel: (215) 864-7000
    *fiddlert@whiteandwilliams.com*
10  *birchm@whiteandwilliams.com*

11  *Attorneys for Plaintiff Google LLC*

12

13

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

16  GOOGLE, LLC,                          )   Case No.:
                                          )
17              Plaintiff,                )   **DECLARATION OF SMRITI DESAI**
                                          )   **IN SUPPORT IN SUPPORT OF**
18       v.                               )   **GOOGLE LLC'S COMPLAINT AND**
                                          )   **MOTION FOR A TEMPORARY**
19  POINT FINANCIAL, INC.,                )   **RESTRAINING ORDER AND**
                                          )   **PRELIMINARY INJUNCTION**
20              Defendant.                )
                                          )
21                                        )
                                          )
22                                        )
                                          )
23                                        )
                                          )
24  _____     )

25

26

27

28

50023726v.1

### DECLARATION OF SMRITI DESAI

I, Smriti Desai, declare under the penalties of perjury, as follows:

1.     I began my employment at Google LLC ("Google") in October 2013 as Engineering Manager for the Storage team. Currently I am Engineering Director for Platforms Compute & Storage Software.

2.     I am the Engineering Executive responsible for the execution of the ███████ and have been in charge since its inception. I have worked with CNEX executive closely since 2019 on this ████ and also been deeply involved in guiding them on it along with my team.

3.     Google is a multinational company known for its innovative approach to technology and its commitment to providing products and services that are beneficial to its users.

4.     Billions of users of Google's products and services commonly store information on ███████████ ("████") ██████████████████████.

5.     Google also stores its own company information in its data centers.

6.     The security of the information on Google's ████ is paramount to Google's business operations.

7.     To protect its information and the information of its users, Google frequently updates its security hardware, software, and protocols.

8.     In doing so, Google spends countless hours of engineering time and hundreds of millions of dollars.

9.     Google also works with other companies that agree not to disclose Google's confidential information.

10.    One of those companies was CNEX Labs, Inc. ("CNEX"), who Google contracted with to assist in the █████████████████████ (the "████████████") ████████ ████████████████████████.

50023726v.1

1    11. ███████████████████████████████████████

2  █████████████████████████████████████████████

3  ███████████████████████████████████████████.

4    12. ████████████████████████████████████████

5  ████████████  ███████████.

6    13.    Therefore, under the protections of a non-disclosure agreement (*see* Ex. 7) and the

7  confidentiality provisions in the MPA (*see* Ex. 4, MPA at § 11), Google provided CNEX with

8  proprietary, confidential, and trade secret information ("Google's IP") pertaining to its existing

9  infrastructure to ensure that ████████████████  ██████████████████████

10  ████████████████████████████████████████████.

11    14.    This information included:

12        a.  ███████████████████████████████████

13            ██  ████████████████████████  ██████████████

14            ████████████████████████████████████

15            ███████████████████████.

16        b.  ██████████████████████████  ████████████████

17            ████████████████████████████████.

18    15.    Google's IP also included ████████████████████████

19  ████████████████████████████████████████████.

20    16. ████████████████████████████████████████

21  ██████████████████████████████.

22    17. ███████████████████████████████████████

23  ████████████████████████  ██████████.

24

25

─────────────────

26  [1] ████████████████████████████████████████████

27  ██████████████████████████████████████████████

28

1    18.  ███████████████████████████████████

2    ███████████████████████████████████████████

3    ████████████████████████████████.

4    19.  Google's ████████████████ include: (i) █████████████; (ii)

5    ████████████ ██ ; (iii) █████████████████████████

6    ██████████████ ; (iv) █████████████████████████████

7    ██████████ █ █████████████; (v) ████████████████████

8    ████████████████████████████████████████████

9    ████████████████████████████████████ (vi) ██████████

10   ██████████████; (vii) ███████████████████; and (viii)

11   ████████████████████████████████████████████

12   ██████████████████.

13   20.  ███████████████████████████████████

14   ████████████████████████████.

15   21.  Therefore, Google's ██████████████ ███████████ not only included

16   ████████████████████████ but also ███████████████████████████

17   ████████████████████████████████████████████

18   █████████████████████.

19   22.  As a result, the ████████████████ ████████████████████████

20   include Google's Intellectual Property.

21   23.  ███████████████████████████████████

22   ████████████████████████████████████████████

23   ██████████████.

24   24.  ███████████████████████████████████

25   ███████████████████████████████████. This

26   feature gives Google a distinct competitive advantage.

27

28

25. Specifically, Google's ███████████████ include: (i) ████████ █; ████████████████████████████████████████████; (ii) ████████████; ███████████████████████████████████████████; (iii) ███████████; ████████████████████████████████████████; and (iv) ███████████████; ██████████.

26. ████████████████████████████████████████████████████████████████.

27. Google's █████████████ not only included ███████████████ ██████████████████ but also confidential, proprietary, and trade secret information about ███████████████████████████████████████████████████████ █████████.

28. The █████████████████ ███████████████████████ include Google's IP.

29. After sharing its ███████████████ with CNEX, Google "standardized" (i.e., made public through open-source) certain aspects of its ███████████████. However, other aspects, such as Google's █████████████████████ █████, which ████████████████████████████████████████████████, remain proprietary to Google. Similarly, the ███████████████████████ ███████████████████ remains confidential.

30. Google also provided CNEX with confidential, proprietary, and trade secret ████████████████████████████. ███████████████████████████ ████████████████████████████████████████████ █ ████████████████.

_____

2 ████████████████████████████████████████████████████████ ████████████████████████████████████████████████

-5-

31.     This ███████████ enables Google to ████████████████████████████
████████████████████████████████████████████.

**CNEX Begins to Work on the ████████████████████**
**Utilized to Manufacture and Test the ████████████.**

32.     With Google's IP in hand and the specifications set forth by Google in the SOW and the SOW Amendment, CNEX began to design the ████████████████████████.

33.     At each step in the design process, CNEX reported back to Google with its progress.

34.     This process also necessitated Google to test run certain applications that were included in the ████████████████████ on its system to ensure ████████████████ ████████████████████████.

35.     During these test runs, Google uncovered multiple issues with CNEX's design and software.

36.     Over the course of the ███████████, Google identified and resolved at least 844 issues related to CNEX's design and software.

37.     To rectify these issues, Google, worked with CNEX to (i) ████████████████ ███; (ii) ████████████████████████████████████; (iii) ████████████████ ████████████████████████████████████████; and (iv) ████████████████ ████████████████████████████████████████████████████████████████ ███████.

38.     As a result, the final design of the ████████████████████ and the ████████████ contain Google's Intellectual Property, which is inextricably intertwined with CNEX's work product.

39.     CNEX acknowledged that its ████████████████████████ incorporated Google's IP and could not be shared without Google's explicit permission.

40.     In March 2022, after years of collaborative work, CNEX asked Google for permission to share the ████████████████ within the ████████████████████ with another one of its customers, ████████████████, to demonstrate its design capabilities.

-6-

50023726v.1

41.     Google declined the request so as to protect its IP and protect its distinct competitive advantage.

42.     As the unauthorized disclosure of any of Google's IP would cause immediate and irreparable harm to Google, Google ensured that the MPA specifically provided that ███████ ████████. *See* Ex. 4, MPA at § 11.3.

43.     As a result of Point Financial's actions and Google's inability to use the ████ ██████████████████████████, Google has and will continue to sustain irreparable harm and substantial damages, including but not limited to (i) ████ ██████████████████████████; (ii) ████████████████ ████; (iii) ██████████████████████████████; (iv) █████████████████████ ████████████; and (v) █████████████████████████████ ██.

I declare under penalty of perjury, to the best of my knowledge, under the laws of the United States of America that the foregoing is true and correct.

Dated: 5/8/2025

Signed by:

*Smriti Desai*

7A44A9F57DBB4C5...

Smriti Desai

-7-

50023726v.1

Exhibit 4

FILED UNDER SEAL

Exhibit 5

FILED UNDER SEAL

Exhibit 6

FILED UNDER SEAL

Exhibit 7

FILED UNDER SEAL

Exhibit 8

FILED UNDER SEAL

Exhibit 9

FILED UNDER SEAL

Exhibit 10

FILED UNDER SEAL

Exhibit 11



June 24, 2024


Google, Inc.
Attn: Mukul Kelkar
Commodity Manager
1600 Amphitheatre Way
Mountain View, California 94043

*Re: New Payment Instructions for CNEX Labs, Inc. and Royalty obligations*


Mr. Kelkar:

As you are aware, Point Financial, Inc. ("PFI") is the senior secured lender to CNEX Labs, Inc. (CNEX) and we are writing to inform you that CNEX has defaulted on its obligations to PFI under the terms of our security agreement dated November 23, 2021 (A copy of this agreement will be provided upon request). This agreement grants us a security interest in all CNEX's assets, including accounts receivable and general intangibles. You are hereby given notice that PFI has exercised its rights under this security agreement and Article Nine of the Uniform Commercial Code to collect directly all accounts and general intangible obligations at any time payable to CNEX.

Because PFI has control of CNEX's bank accounts, there will be no change to the address of Google's payments to CNEX.  However, the payments will need to be wired and not mailed. This change is necessary to protect our security interests.

Please ensure that your records reflect the following payment instructions for any unpaid invoices and other future payments:

| | |
|---|---|
| Bank Name: | SVB, a division of First Citizens Bank |
| Routing Number: | 121140399 |
| For the Credit of: | CNEX Labs, Inc. |
| Credit Account Number: | 3301139060 |

It should be noted that the Board of Directors of CNEX, represented by the acting CEO Mr. Bill Moore, is being copied in on this correspondence, and has acknowledged and agreed to the contents of this letter.

Further to the above, it is our understanding that Google has opted to exercise its █████████ █████████████████ as afforded under that ███████████████████████ ████████ as subsequently amended from time to time, and the related ████████████████

**3318 East Kachina Drive**
**Phoenix, Arizona 85044**
**Email: admin@pointfin.com**



██████████████████ We remind and hereby notify you that if Google moves forward under its ████████████, the following contractual provisions of the ████████████ (specifically, the ████████████████████████ apply:





We appreciate your prompt attention to this important matter. If you feel that you are not the appropriate individual to deal with this matter, please direct us to who can and immediately pass to them this letter.  The notice hereby given under Article Nine of the Uniform Commercial Code is effectively given whether or not you are the appropriate representative of Google to respond.

Thank you for your understanding and immediate attention to this important notice.


Sincerely,

*Michael J. O'Malley*
Michael J. O'Malley
President
Point Financial, Inc.

Cc:    Doug Guffey, Esq.
       Eric R. Koontz


Acknowledged and agreed:


Bill Moore, CEO
CNEX Labs, Inc.

Exhibit 12

**From:** Mukul Kelkar <mukulkelkar@google.com>
**Date:** Monday, April 15, 2024 at 5:09 PM
**To:** Joe DeFranco <jdefranco@cnexlabs.com>, Shumon Ganguly <shumong@google.com>
**Cc:** ███████████ <███████████>, ████ ████ <███████████>, Mukul Kelkar <mukulkelkar@google.com>
**Subject:** Re: CNEX Closure

+Shumon Ganguly

Hello Joe,
Thank you for sending the letter and connecting us to Jeff and Helen.

Jeff, Helen,
I will setup time to align on the supply moving forward. Please let me know if there is any other information you need right away.
Regards,

Mukul Kelkar| Commodity Manager |
| mukulkelkar@google.com | | 916-539-0671

On Mon, Apr 15, 2024 at 3:05 PM Joe DeFranco <jdefranco@cnexlabs.com> wrote:

> Hi Helen, Jeff,
> I wanted to let you two know that as of last Friday CNEX Labs has officially shut down. Long story short our venture debt provider took actions that eliminated any runway in front of us. With that, the device we have in production at Google and built by ████ will be taken over by Google per the terms of the contract we had with them. The plan will be to continue the ramp just now as Google as your customer and not CNEX. Note I have Mukul from Google included on this email.
>
> Sorry for the news, was great working with you and always appreciated ████ s support.
> Regards,
> Joe
>
> Joe DeFranco
> Vice President of Sales
> CNEX Labs, Inc.

(408) 757-6304


--
Mukul Kelkar
Commodity Manager, Semiconductors
+1 916-539-0061
**Error! Filename not specified.**

████████

This email communication (and any attachments) is proprietary information for the sole use of its intended recipient. Any unauthorized review, use or distribution by anyone other than the intended recipient is strictly prohibited. If you are not the intended recipient, please notify the sender by replying to this email, and then delete this email and any copies of it immediately. Thank you.

CCPA Notice: Your contact information, personal identifiers, or other personal information provided to ████ over the course of our communications may be used to further the relationship between ████ and you or your company. Personal information will be retained only during our engagements and for other legal purposes. Our privacy policy can be found at www.████.com/privacy.


--

Mukul Kelkar

Commodity Manager, Semiconductors

+1 916-539-0061

████████

This email communication (and any attachments) is proprietary information for the sole use of its intended recipient. Any unauthorized review, use or distribution by anyone other than the

Exhibit 13



Michael Carr <mikefcarr@google.com>

---

# Fwd: Intro

**Eric Koontz** <ekoontz@pointfin.com>          Wed, Jul 3, 2024 at 2:39 PM
To: Mukul Kelkar <mukulkelkar@google.com>
Cc: Michael O'Malley <momalley@pointfin.com>, Bill Moore <bill@cnexlabs.com>,
"Douglas O. Guffey" <DOG@jaburgwilk.com>, Mukul Kelkar <mukulkelkar@google.com>,
Michael Carr <mikefcarr@google.com>


Thank you for your response. At this stage, we are still in the process of gathering all the information we can about the company and their remaining assets. That being said, we have been informed by the Board that they will be filing appropriate paperwork to take the company into Chapter 7 bankruptcy. Until we understand completely how the court/trustee will manage the process, we will reserve getting back to you with our thoughts and comments.


In the meantime, we respectfully request access to the portal between CNEX and Google, which CNEX management said you could do.


Regards,




Eric Koontz

COO, Vice President

*"Providing growth capital to emerging market companies"*


480.707.9234
(mobile)


ekoontz@pointfin.com


www.pointfin.com

**From:** Mukul Kelkar <mukulkelkar@google.com>
**Date:** Monday, July 1, 2024 at 2:41 PM
**To:** Eric Koontz <ekoontz@pointfin.com>
**Cc:** Michael O'Malley <momalley@pointfin.com>, Bill Moore <bill@cnexlabs.com>,
Douglas O. Guffey <DOG@jaburgwilk.com>, Mukul Kelkar <mukulkelkar@google.com>,
Michael Carr <mikefcarr@google.com>
**Subject:** Re: Intro

Dear Mr. O'Malley, Mr. Koontz and Mr. Moore,


Thank you for clarifying the status of Point Financial's relationship to CNEX. As you
are aware, CNEX was unable to provide the products ordered by Google. As such,
Google had to incur additional, unanticipated expenses to complete its
order, including payments to third parties that CNEX failed to make. In addition,
products ordered from CNEX have yet to be recieved, accepted and qualified. And
Google made an NRE payment to CNEX on or around the time that CNEX ceased
operations. As such, Google is still determining if any amounts are owed to CNEX.
In the event there is a payment owed to CNEX by Google, we will reach out to you
to discuss the terms of any such payment.


Please note that Google has not, and has no plans to, exercise the ▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮ Due to CNEX's inability to provide the ordered product
and cessation of operations, CNEX and Google have been and continue to proceed
as agreed under ▮▮▮▮▮▮▮▮▮▮▮▮▮▮


cc: Michael Carr

Regards,

Mukul Kelkar| Commodity Manager | mukulkelkar@google.com | 916-539-0061

On Mon, Jun 24, 2024 at 4:21 PM Eric Koontz <ekoontz@pointfin.com> wrote:

In response to your email below, please see the attached. Assuming that this will suffice for your records, please let us know when you would be available to speak. This is of the utmost importance, so we will be sure to accommodate your schedule as needed. Thank you.

Eric Koontz

COO, Vice President

signature_1108558426

Point Financial

"Providing growth capital to emerging market companies"

480.707.9234
(mobile)

E          ekoontz@pointfin.com

W          www.pointfin.com

**From:** Mukul Kelkar <mukulkelkar@google.com>
**Date:** Tuesday, June 18, 2024 at 7:21 PM
**To:** Eric Koontz <ekoontz@pointfin.com>, Mukul Kelkar <mukulkelkar@google.com>
**Cc:** Michael O'Malley <momalley@pointfin.com>
**Subject:** Re: Intro

Hello Eric,

I assume this is in connection with the April 11 email from Point Financial directing Google to make payments for outstanding account receivables owed to CNEX to Point Financial. If so, please note that Google cannot do so without express written permission from CNEX, ideally in an agreement signed by all parties involved. If there is something else that you'd like to discuss, please let me know so that I can include the relevant contacts.

Regards,

Mukul Kelkar | Commodity Manager | mukulkelkar@google.com | 916-539-0061

On Tue, Jun 18, 2024 at 11:45 AM Eric Koontz <ekoontz@pointfin.com> wrote:

Hi Mukul,

It's been about a year since we last worked with on the ▮▮▮▮▮▮ to the Google/CNEX contract, so nice to reconnect with you. We would like to talk with you further about the current status of the relationship, so if you are available this afternoon to talk we would greatly appreciate it. If not this afternoon, please let us know some days/times that work for you. Thanks again.

Eric Koontz

COO, Vice President

480.707.9234 (mobile)

                        *"Providing growth capital to emerging market companies"*

ekoontz@pointfin.com

www.pointfin.com

**From:** Joe DeFranco <jdefranco@cnexlabs.com>
**Date:** Monday, June 17, 2024 at 5:40 PM
**To:** Kelkar Mukul <mukulkelkar@google.com>, Eric Koontz <ekoontz@pointfin.com>, Michael O'Malley <momalley@pointfin.com>
**Subject:** Intro

Erik, Michael,

Here is the intro to Mukul from Google, I will leave it up to you all from here please remove me moving forward.

Regards,

Joe


Joe DeFranco

Vice President of Sales

CNEX Labs, Inc.

(408) 757-6304



--

Mukul Kelkar

Commodity Manager, Semiconductors

+1 916-539-0061

**Error! Filename not specified.**

--

Mukul Kelkar

Commodity Manager, Semiconductors

+1 916-539-0061

Image removed by sender.

Exhibit 14



Michael Carr <mikefcarr@google.com>

## CNEX Equipment

**Eric Koontz** <ekoontz@pointfin.com>                                                    Fri, Aug 23, 2024 at 12:42 PM
To: "▮▮▮▮▮▮▮▮▮▮▮▮" <▮▮▮▮▮▮▮▮▮▮>
Cc: Michael O'Malley <momalley@pointfin.com>, Mukul Kelkar <mukulkelkar@google.com>, Michael Carr <mikefcarr@google.com>, Bill
Moore <zfsguy@gmail.com>, Scott Furey <scott.furey@outlook.com>

Point Financial, Inc. ("PFI"), as the senior secured creditor of CNEX Laboratories, Inc., has given due notice to Google, LLC and is exercising its rights
as secured party with a prior perfected security interest in all property of CNEX, to assert control over all CNEX equipment, wherever located.  It's
come to our attention that ▮▮▮▮ has within its possession or control assets owned by CNEX in the nature of equipment and software, used under the
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Furthermore, we understand that the equipment has been used and made available to Google since March 22 (the date
CNEX went into default with Point Financial), so please provide us with a log showing the time used on behalf of Google. You are hereby notified that
the continued use of any equipment or software belonging to CNEX, including without limitation the following described equipment, is a violation of
PFI's rights as secured party and wrongful conversion of such property actionable under US Law.

▮▮▮▮▮▮▮▮▮▮▮ **outside of CNEX Facilities**

| Item | Qty | Est. Unit Cost | Location | |
|------|-----|----------------|----------|--|
|      |     |                |          |  |
| ▮▮▮▮▮▮▮ | 5 | $20K | ▮▮▮▮▮▮▮ | |
|      |     |                |          |  |
| ▮▮▮▮ | 1 | $15K | ▮▮▮▮▮ | |
| ▮▮▮▮ | 2 | $10K | ▮▮▮▮▮ | |
|      |     |                |          |  |

PFI intends to assert and enforce its rights in CNEX assets to the full extent of the law.  However, if you wish to purchase or otherwise acquire use of the
above-listed property or any other CNEX property, please contact me using the information below. Time is of the essence, so we would like to schedule
a call for either tomorrow or early next week.

Regards,

Eric Koontz

COO, Vice President                          *"Providing growth capital to emerging market companies"*

480.707.9234 (mobile)

ekoontz@pointfin.com

www.pointfin.com

 Michael Carr <mikefcarr@google.com>

---

# CNEX Equipment

**Eric Koontz** <ekoontz@pointfin.com>            Fri, Aug 23, 2024 at 12:42 PM
To: "███████████████" <██████████████████>
Cc: Michael O'Malley <momalley@pointfin.com>, Mukul Kelkar <mukulkelkar@google.com>, Michael Carr <mikefcarr@google.com>, Bill Moore <zfsguy@gmail.com>, Scott Furey <scott.furey@outlook.com>

Point Financial, Inc. ("PFI"), as the senior secured creditor of CNEX Laboratories, Inc., has given due notice to Google, LLC and is exercising its rights as secured party with a prior perfected security interest in all property of CNEX, to assert control over all CNEX equipment, wherever located.  It's come to our attention that ███ has within its possession or control assets owned by CNEX in the nature of equipment and software, used under the ████████████████████ Furthermore, we understand that the equipment has been used and made available to Google since March 22 (the date CNEX went into default with Point Financial), so please provide us with a log showing the time used on behalf of Google. You are hereby notified that the continued use of any equipment or software belonging to CNEX, including without limitation the following described equipment, is a violation of PFI's rights as secured party and wrongful conversion of such property actionable under US Law.

**████████████████ outside of CNEX Facilities**

| Item | Qty | Est. Unit Cost | Location | Notes |
|------|-----|----------------|----------|-------|
|  |  |  |  |  |
| ████████████ | 5 | $20K | ████████████ |  |
| ████████████ | 1 | TBD | ████████ |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

PFI intends to assert and enforce its rights in CNEX assets to the full extent of the law.  However, if you wish to purchase or otherwise acquire use of the above-listed property or any other CNEX property, please contact me using the information below. Time is of the essence, so we would like to schedule a call for either tomorrow or early next week.


Regards,




Eric Koontz

COO, Vice President



480.707.9234 (mobile)

*"Providing growth capital to emerging market companies"*

ekoontz@pointfin.com


www.pointfin.com

**Michael Carr <mikefcarr@google.com>**

---

# CNEX Equipment

**Eric Koontz** <ekoontz@pointfin.com>                     Thu, Aug 22, 2024 at 3:40 PM
To: "███████████████████████████">
Cc: Michael O'Malley <momalley@pointfin.com>, Mukul Kelkar <mukulkelkar@google.com>,
Michael Carr <mikefcarr@google.com>, Bill Moore <zfsguy@gmail.com>, Scott Furey
<scott.furey@outlook.com>

Point Financial, Inc. ("PFI"), as the senior secured creditor of CNEX Laboratories, Inc.,
has given due notice to Google, LLC (attached hereto) and is exercising its rights as secured
party with a prior perfected security interest in all property of CNEX, to assert control over
all CNEX equipment, wherever located. It's come to our attention that ██████ has within its
possession or control assets owned by CNEX in the nature of equipment and software, used
under the ████████████████ Furthermore, we understand that the equipment has been used
and made available to Google since March 22 (the date CNEX went into default with Point
Financial), so please provide us with a log showing the time used on behalf of Google. You
are hereby notified that the continued use of any equipment or software belonging to CNEX,
including without limitation the following described equipment, is a violation of PFI's rights
as secured party and wrongful conversion of such property actionable under US Law.

| Item | Qty | Est. Unit Cost | Last Known Location |
|------|-----|----------------|---------------------|
| ██████████ | 1 | $3.5M | ████████████ |
| | | | |

PFI intends to assert and enforce its rights in CNEX assets to the full extent of the law. However, if
you wish to purchase or otherwise acquire use of the above-listed property or any other CNEX
property, please contact me using the information below. Time is of the essence, so we would like to
schedule a call for either tomorrow or early next week.

Regards,

Eric Koontz

COO, Vice President

480.707.9234 (mobile)

"Providing growth capital to emerging market companies"

ekoontz@pointfin.com

www.pointfin.com

---

📄 **LT Google re Royalties and Noninfringement, Final  2024_07_30(6133230.1)[46][62].pdf**
234K

Exhibit 15



**Michael Carr <mikefcarr@google.com>**

# CNEX Equipment

Eric Koontz <ekoontz@pointfin.com>                                    Mon, Jan 13, 2025 at 3:31 PM
To: "███████████████" <███████████████████>
Cc: Michael O'Malley <momalley@pointfin.com>, Mukul Kelkar
<mukulkelkar@google.com>, Michael Carr <mikefcarr@google.com>, Bill Moore
<zfsguy@gmail.com>, Scott Furey <scott.furey@outlook.com>, "Douglas O. Guffey"
<DOG@jaburgwilk.com>, "Vandermark, James" <Vandermarkj@whiteandwilliams.com>

On August 22, 2024, Point Financial, Inc. ("PFI"), as the senior secured creditor of CNEX
Laboratories, Inc., sent ██ the email notice below to assert our rights as a secured party with a prior
perfected security interest in all property of CNEX. To date, we have not received any
acknowledgment or response to that communication. We are resending that notice as set forth below,
in order to reiterate our position and our demand for an accounting of your company's use of CNEX
property and make completely clear that the November 2024 filing by CNEX of a petition in
bankruptcy does not alter PFI's rights as a secured party with a first and prior security interest in all
property of CNEX.

Furthermore,  be advised that PFI will be moving forward with a motion in the bankruptcy court to
lift the stay and allow PFI to pursue its remedies.

Regards,

Eric Koontz

COO, Vice President

*"Providing growth capital to emerging market companies"*

480.707.9234 (mobile)

ekoontz@pointfin.com

www.pointfin.com

**From:** Eric Koontz <ekoontz@pointfin.com>
**Date:** Friday, August 23, 2024 at 2:42 PM
**To:** ██████████████ < ██████████████████ >
**Cc:** Michael O'Malley <momalley@pointfin.com>, Mukul Kelkar <mukulkelkar@google.com>, Michael Carr <mikefcarr@google.com>, Bill Moore <zfsguy@gmail.com>, Scott Furey <scott.furey@outlook.com>
**Subject:** CNEX Equipment

Point Financial, Inc. ("PFI"), as the senior secured creditor of CNEX Laboratories, Inc., has given due notice to Google, LLC and is exercising its rights as secured party with a prior perfected security interest in all property of CNEX, to assert control over all CNEX equipment, wherever located. It's come to our attention that ████ has within its possession or control assets owned by CNEX in the nature of equipment and software, used under the ████████████████████ Furthermore, we understand that the equipment has been used and made available to Google since March 22 (the date CNEX went into default with Point Financial), so please provide us with a log showing the time used on behalf of Google. You are hereby notified that the continued use of any equipment or software belonging to CNEX, including without limitation the following described equipment, is a violation of PFI's rights as secured party and wrongful conversion of such property actionable under US Law.

████████████████ **outside of CNEX Facilities**

| Item | Qty | Est. Unit Cost | Location | Notes |
|------|-----|----------------|----------|-------|
|      |     |                |          |       |

| | | | | |
|---|---|---|---|---|
| ███████████ | 5 | $20K | ████████████ | |
| ████████ | 1 | TBD | ████████ | |
| | | | | |
| | | | | |
| | | | | |

PFI intends to assert and enforce its rights in CNEX assets to the full extent of the law.  However, if you wish to purchase or otherwise acquire use of the above-listed property or any other CNEX property, please contact me using the information below. Time is of the essence, so we would like to schedule a call for either tomorrow or early next week.

Regards,

Eric Koontz

COO, Vice President

480.707.9234 (mobile)

"Providing growth capital to emerging market companies"

ekoontz@pointfin.com

www.pointfin.com

**LT Google re Royalties and Noninfringement, Final  2024_07_30(6133230.1)[46][62][5].pdf**
234K



Michael Carr <mikefcarr@google.com>

## CNEX Equipment

**Eric Koontz** <ekoontz@pointfin.com>                                              Mon, Jan 13, 2025 at 3:31 PM
To: "█████████████" <█████████████>
Cc: Michael O'Malley <momalley@pointfin.com>, Mukul Kelkar <mukulkelkar@google.com>, Michael Carr <mikefcarr@google.com>, Bill Moore <zfsguy@gmail.com>, Scott Furey <scott.furey@outlook.com>, "Douglas O. Guffey" <DOG@jaburgwilk.com>, "Vandermark, James" <Vandermarkj@whiteandwilliams.com>

On August 22, 2024, Point Financial, Inc. ("PFI"), as the senior secured creditor of CNEX Laboratories, Inc., sent ████ the email notice below to assert our rights as a secured party with a prior perfected security interest in all property of CNEX. To date, we have not received any acknowledgment or response to that communication. We are resending that notice as set forth below, in order to reiterate our position and our demand for an accounting of your company's use of CNEX property and make completely clear that the November 2024 filing by CNEX of a petition in bankruptcy does not alter PFI's rights as a secured party with a first and prior security interest in all property of CNEX.

Furthermore,  be advised that PFI will be moving forward with a motion in the bankruptcy court to lift the stay and allow PFI to pursue its remedies.

Regards,

Eric Koontz

COO, Vice President

480.707.9234 (mobile)

*"Providing growth capital to emerging market companies"*

ekoontz@pointfin.com

www.pointfin.com

---

**From:** Eric Koontz <ekoontz@pointfin.com>
**Date:** Friday, August 23, 2024 at 2:42 PM
**To:** █████████████ <█████████████>
**Cc:** Michael O'Malley <momalley@pointfin.com>, Mukul Kelkar <mukulkelkar@google.com>, Michael Carr <mikefcarr@google.com>, Bill Moore <zfsguy@gmail.com>, Scott Furey <scott.furey@outlook.com>
**Subject:** CNEX Equipment

Point Financial, Inc. ("PFI"), as the senior secured creditor of CNEX Laboratories, Inc., has given due notice to Google, LLC and is exercising its rights as secured party with a prior perfected security interest in all property of CNEX, to assert control over all CNEX equipment, wherever located.  It's

come to our attention that ███████ has within its possession or control assets owned by CNEX in the nature of equipment and software, used under the ████████████████. Furthermore, we understand that the equipment has been used and made available to Google since March 22 (the date CNEX went into default with Point Financial), so please provide us with a log showing the time used on behalf of Google. You are hereby notified that the continued use of any equipment or software belonging to CNEX, including without limitation the following described equipment, is a violation of PFI's rights as secured party and wrongful conversion of such property actionable under US Law.

**██████████████ outside of CNEX Facilities**

| Item | Qty | Est. Unit Cost | Location | |
|------|-----|----------------|----------|---|
| | | | | |
| ███████████ | 5 | $20K | ████████████ | |
| | | | | |
| ████████ | 1 | $15K | ████████████ | |
| ██████████ | 2 | $10K | ████████████ | |
| | | | | |

PFI intends to assert and enforce its rights in CNEX assets to the full extent of the law.  However, if you wish to purchase or otherwise acquire use of the above-listed property or any other CNEX property, please contact me using the information below. Time is of the essence, so we would like to schedule a call for either tomorrow or early next week.


Regards,



Eric Koontz

COO, Vice President



480.707.9234 (mobile)

                 *"Providing growth capital to emerging market companies"*

ekoontz@pointfin.com



www.pointfin.com

**LT Google re Royalties and Noninfringement, Final  2024_07_30(6133230.1)[46][62].pdf**
234K



**Michael Carr <mikefcarr@google.com>**

# CNEX Equipment

**Eric Koontz** <ekoontz@pointfin.com>                    Mon, Jan 13, 2025 at 3:31 PM
To: "███████████" <██████████>
Cc: Michael O'Malley <momalley@pointfin.com>, Mukul Kelkar <mukulkelkar@google.com>,
Michael Carr <mikefcarr@google.com>, Bill Moore <zfsguy@gmail.com>, Scott Furey
<scott.furey@outlook.com>, "Douglas O. Guffey" <DOG@jaburgwilk.com>, "Vandermark,
James" <Vandermarkj@whiteandwilliams.com>

On August 22, 2024, Point Financial, Inc. ("PFI"), as the senior secured creditor of CNEX
Laboratories, Inc., sent ████ the email notice below to assert our rights as a secured party with a
prior perfected security interest in all property of CNEX. To date, we have not received any
acknowledgment or response to that communication. We are resending that notice as set forth below,
in order to reiterate our position and our demand for an accounting of your company's use of CNEX
property and make completely clear that the November 2024 filing by CNEX of a petition in
bankruptcy does not alter PFI's rights as a secured party with a first and prior security interest in all
property of CNEX.


Furthermore,  be advised that PFI will be moving forward with a motion in the bankruptcy court to lift
the stay and allow PFI to pursue its remedies.



Regards,



Eric Koontz

COO, Vice President

                                        *"Providing growth capital to emerging market companies"*



480.707.9234 (mobile)



ekoontz@pointfin.com

www.pointfin.com

**From:** Eric Koontz <ekoontz@pointfin.com>
**Date:** Thursday, August 22, 2024 at 5:41 PM
**To:** ██████████████ < ███████████ >
**Cc:** Michael O'Malley <momalley@pointfin.com>, Mukul Kelkar <mukulkelkar@google.com>,
Michael Carr <mikefcarr@google.com>, Bill Moore <zfsguy@gmail.com>, Scott Furey
<scott.furey@outlook.com>
**Subject:** CNEX Equipment

Point Financial, Inc. ("PFI"), as the senior secured creditor of CNEX Laboratories, Inc., has given due
notice to Google, LLC (attached hereto) and is exercising its rights as secured party with a prior
perfected security interest in all property of CNEX, to assert control over all CNEX equipment,
wherever located.  It's come to our attention that █████ has within its possession or control assets
owned by CNEX in the nature of equipment and software, used under the █████████████
█████████  Furthermore, we understand that the equipment has been used and made available to Google
since March 22 (the date CNEX went into default with Point Financial), so please provide us with a
log showing the time used on behalf of Google. You are hereby notified that the continued use of any
equipment or software belonging to CNEX, including without limitation the following described
equipment, is a violation of PFI's rights as secured party and wrongful conversion of such property
actionable under US Law.

| Item | Qty | Est. Unit Cost | Last Known Location |
|------|-----|----------------|---------------------|
| █████████ | 1 | $3.5M | ██████████ |

|  |  |  |  |
|---|---|---|---|
|  |  |  |  |

PFI intends to assert and enforce its rights in CNEX assets to the full extent of the law.  However, if you wish to purchase or otherwise acquire use of the above-listed property or any other CNEX property, please contact me using the information below. Time is of the essence, so we would like to schedule a call for either tomorrow or early next week.

Regards,

Eric Koontz

COO, Vice President

480.707.9234 (mobile)

*"Providing growth capital to emerging market companies"*

ekoontz@pointfin.com

www.pointfin.com

**LT Google re Royalties and Noninfringement, Final  2024_07_30(6133230.1)[46][62][5][58].pdf**
234K

Exhibit 16



**Thomas B. Fiddler**

1650 Market Street | One Liberty Place, Suite 1800 | Philadelphia, PA 19103
Direct 215.864.7081 | Fax 215.789.7564
fiddlert@whiteandwilliams.com | whiteandwilliams.com

September 10, 2024

By E-Mail

Maria Crimi Speth, Esquire
Douglas O. Guffey, Esquire
Jaburg & Wilk, P.C.
1850 N. Central Avenue, Suite 1200
Phoenix, AZ 85004

RE:   Google LLC/CNEX Labs, Inc.

Dear Ms. Speth and Mr. Guffey:

As you know, this firm represents Google LLC with respect to Point Financial, Inc.'s unlawful interference with Google's contractual and business relationship with ████, ████, and ████ ████ (the "Vendors"). Specifically, by emails dated August 23, 2024, from Point Financial's COO and Vice President, Eric Koontz, Point Financial improperly informed the Vendors that they are not permitted to use any equipment or software in their possession belonging to CNEX to fulfill Google orders. Point Financial further threatened the Vendors by asserting without any factual or legal basis that the Vendors' use of CNEX equipment and software to fulfill Google orders is in violation of Point Financial's rights, constitutes wrongful conversion of its property, and is actionable.

Any rights that Point Financial has to CNEX's equipment and software are derivative of CNEX's rights and subject to CNEX's contractual obligations to Google. Under the ████████ ████████ between CNEX and Google ██████████████ (the "████") and effective on CNEX's cessation of business on April 12, 2024, Google



Maria Crimi Speth, Esquire
September 10, 2024
Page 2

*See* ▮▮▮ § 10.4(C).  Additionally, CNEX agreed to ensure that upon the cessation of its business that "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" *See* ▮▮▮ § 10.4(D).

Point Financial's instructions to the Vendors to cease using CNEX's equipment and software and their threats to file suit are in direct contravention of Google's express rights under the ▮▮▮ Google bargained-for and received these rights from CNEX specifically to protect its ability to continue to manufacture and obtain the ▮▮▮ in the event of the cessation of CNEX's business.  Notwithstanding Google's express rights to CNEX's equipment and software, Point Financial's communications with the Vendors have had their intended effect:  they have disrupted Google's ability to obtain the ▮▮▮  It is clear that Point Financial was not only aware of Google's bargained-for rights but also its need for the ▮▮▮ and that Point Financial has taken these unlawful actions to attempt to coerce Google to purchase the equipment and software to which Google already has undeniable rights.

As a direct result of Point Financial's actions and Google's inability to obtain the ▮▮▮, Google will sustain damages, including potentially the inability to complete projects in which Google has invested substantial funds and engineering time.  On August 30, 2024, my partner James Vandermark wrote to you and demanded Point Financial to cease and desist all communications with the Vendors and confirm in writing that it has done so.  Point Financial has failed to respond to that demand.  Google now demands that within 48 hours, Point Financial retract in writing its August 23, 2024 emails to the Vendors and inform the Vendors that it will not make any claim against them for continuing to manufacture the ▮▮▮ for Google.  If Point Financial fails to do so, Google may take any necessary measures to prevent further damage to Google and recover the damages that it has sustained.  This letter is written without prejudice to any of Google's rights or remedies.

Very truly yours,

WHITE AND WILLIAMS LLP

Thomas B. Fiddler

cc:    Michael Carr, Esquire
       Chester Day, Esquire
       James Vandermark, Esquire

33532755v.2

EXHIBIT 17

Entered on Docket
April 24, 2025
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



The following constitutes the order of the Court.
Signed: April 24, 2025

_____
**Stephen L. Johnson**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Case No. 24-51889 SLJ |
| | ) |
| CNEX Labs, Inc., | ) Chapter 7 |
| | ) |
| | ) |
| | ) Date: April 22, 2025 |
| Debtor(s). | ) Time: 10:00 a.m. |
| | ) Ctrm: 10 |
| | ) |

## ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY

The Motion for Relief from the Automatic Stay ("Motion"), filed by Point Financial, Inc. ("Creditor"), came on for continued hearing at the above-referenced date and time. Appearances were noted on the record. After hearing arguments from counsel, the court took the Motion under submission.

Debtor filed this chapter 7 case on December 11, 2024.[1] Debtor's Schedule A/B lists the value of Debtor's assets as $79,933.99, most of which are security deposits for Debtor's two leased business premises. Although Debtor lists $1,900,000 in accounts receivables, Debtor indicates they are uncollectible. According to Schedule D, Creditor is owed $32,708,305, secured by UCC-1. Both Schedules A/B and D show the value of Creditor's collateral as $0.[2]

_____
[1] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.
[2] Debtor included a notation in that most of the collateral has already been repossessed prepetition by Creditor.

1

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

According to the Motion, Creditor loaned funds to Debtor, including a lease of certain equipment to Debtor, secured by a blanket lien on most of Debtor's personal property ("Property").[3] Creditor asserts that Debtor defaulted on the loan and the outstanding balance of its claim is in the approximate amount of $34,576,432. Creditor requests relief from stay under § 362(d)(1) and (2).

Debtor filed a Statement of Non-Opposition to the Motion, but the chapter 7 trustee ("Trustee") filed an opposition. Trustee asserts there is equity in the Property for several reasons. First, Trustee asserts that Creditor imposed a $20 million penalty on the $10 million loan, and excluding the penalty, the outstanding obligation to Creditor is only $7,146,872, which may be further reduced based on potential usury and other claims against Creditor. Second, Debtor has in its inventory masks that were developed for Google for wafer production, which included intellectual property belonging to Google, and Google and Trustee have reached an agreement to sell some of the Property, subject to Creditor's lien, to Google for $150,000 unencumbered cash to the estate. Third, Trustee asserts that the $1,900,000 in accounts receivable are owed by Google and will be included in the sale.

Section 362(d)(2) provides that the court shall grant relief from stay if the debtor does not have equity in the subject property and the subject property is not necessary to an effective reorganization. In the Ninth Circuit, for purposes of § 362(d)(2)(A), "equity" is defined as "the difference between the value of the property and all encumbrances upon it." *Stewart v. Gurley*, 745 F.2d 1194, 1195 (9th Cir. 1984).

Even assuming that the amount of the indebtedness secured by Creditor's lien is $7,146,872, as alleged by Trustee, there is no equity in the Property. Trustee does not allege that the Property has a value above Creditor's secured claim. Instead, what Trustee argues is that the Property has "value to the estate," as evidenced by the proposed sale to Google. There are two flaws with this argument. First, "value to the estate" is not the same as "equity." As noted by the Ninth Circuit, "[t]he language of the statute simply refers to the debtor's 'equity,' which has been defined as 'the amount or value of a property above the total liens or

---

[3] *See* Schedule A/B and attachments for list of collateral.

1    charges.'" *Id.* at 1196 (internal citations omitted). Second, Trustee is comparing apples to

2    oranges. The proposed sale to Google includes only a subset of Creditor's collateral, the

3    estate's rights in avoidance claims against Creditor and Google, and any claims the estate may

4    have against Creditor. It is not indicative of the value of the Property. Simply put, the

5    proposed sale does not show that Debtor has "equity" in the Property, as the term is defined in

6    the Ninth Circuit.[4]

7            Although Trustee admits there is no reorganization here because this is a chapter 7

8    case, Trustee argues that the Property is necessary for distribution to unsecured creditors.

9    Trustee provides no legal authority to support what is essentially a rewrite of § 362(d)(2)(B).

10   The statute is clear, and the caselaw uniformly holds that § 362(d)(2)(B) is not implicated in a

11   chapter 7 case. *See, e.g., In re Preuss*, 15 B.R. 896, 897 (B.A.P. 9th Cir. 1981) ("Since

12   reorganization is not relevant in Chapter 7, the only issue is whether there is equity in the

13   property."); *In re Aguilar*, 2014 WL 6981285, at *4 (B.A.P. 9th Cir. Dec. 10, 2014) ("The

14   requirement that the property not be necessary for reorganization is not implicated in a

15   chapter 7 liquidation bankruptcy case since no reorganization is contemplated."); *In re

16   Marques*, 547 B.R. 841, 844 (Bankr. C.D. Cal. 2016) ("The Property is not necessary for a

17   reorganization because this is a chapter 7 case where no reorganization is implicated.").

18           Given Trustee's opposition, the court will not waive the 14-day stay under Bankruptcy

19   Rule 4001(a)(4). *See* 9A Collier on Bankruptcy P 4001.05 (16th 2025). This is consistent with

20   the court's long practice when oppositions are filed.

21           For the foregoing reasons, IT IS HEREBY ORDERED as follows:

22   (1)  The Motion is GRANTED under § 362(d)(2).

23   (2)  The automatic stay is terminated with respect to Creditor's collateral and Creditor

24        may exercise any and all rights and remedies available in accordance with

25        applicable non-bankruptcy law.

26

27   ───────────────

28   [4] Trustee's argument may be relevant in defeating "cause" under § 362(d)(1), but the inquiry
     under § 362(d)(2) depends only on the relative value of property and the debt it secures.

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

3

***END OF ORDER***

**<u>COURT SERVICE LIST</u>**

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4

# EXHIBIT 18



October 15, 2024


Mr. James Vandermark
White and Williams LLP
810 Seventh Avenue, Ste. 500
New York, New York 10019

      Re:    CNEX Labs/Google LLC


Dear Mr. Vandermark,

We understand that a productive conversation recently took place between your firm and our
legal counsel, addressing the issues surrounding CNEX Labs, Inc.'s (CNEX) assets and Point
Financial, Inc.'s (PFI) secured interest in those assets. Based on that discussion and our ongoing
deep market analysis, PFI believes the most efficient and mutually beneficial resolution would be
for Google to purchase PFI's loan and security position with CNEX; in essence, for Google to
buy what PFI owns and control the resolution of PFI's existing collateral interests in a manner
that best benefits Google.

As the senior secured creditor, PFI holds a prior perfected security interest in all CNEX's assets.
At present, the property subject to the PFI security interest includes (without limitation) all
CNEX equipment and intellectual property rights and interests.  As your client's business
representatives are aware, CNEX owns proprietary intellectual property that was developed
before the inception of the "Knuckle" project with Google, and upon which the Knuckle project
was based.  PFI's security interest is vested in all the CNEX intellectual property without
limitation on geographic market, additional development, or use.  Whatever may be ultimately
resolved with respect to Google's right to a license under the Master Purchase Agreement,
Statement of Work and its amendments (which is what we believe you discussed with our
counsel), the best outcome for Google still only provides a license for use rights in certain CNEX
intellectual property for Google's own use limited to fulfilling only the orders existing at the
time of CNEX's insolvency.  What PFI has the power to provide Google is far broader in scope
and far more valuable. By acquiring PFI's loan and security position, Google could secure
effective ownership of CNEX's complete intellectual property, and effectively remove any
ambiguity or risk of future disputes over its usage, development or infringement.

Were PFI to sell CNEX's intellectual property in a private sale to one of Google's competitors in
cloud services (ie. Salesforce, Microsoft, IBM, Oracle, etc.), that competitor would have the
legal right to block Google's use or further development of any part of the CNEX IP.  Even if



Google's license for limited use was deemed valid after such sale, most of the benefit of this technology to Google would be lost.

Conversely, by acquiring what PFI owns, Google would have the clear right to use the proprietary information it took from the CNEX escrow not only to manufacture an unlimited number of the "Knuckle" units, but also to develop improved products and sell to the general market.

By this letter, PFI's offers to sell to Google what it owns for a cash payment of $50 million.  In context of the benefits to Google from unfettered use of the CNEX proprietary information, this is a fair price.

We look forward to your response and remain hopeful that we can reach an amicable resolution.


Regards,

*Michael J. O'Malley*
Michael J. O'Malley
President


Cc:    Douglass Guffey, Esq.
       Maria Cremi Speth, Esq.

EXHIBIT 19

1  Aron M. Oliner (SBN: 152373)
   Geoffrey A. Heaton (SBN: 206990)
2  **DUANE MORRIS LLP**
   One Market Plaza
3  Spear Street Tower, Suite 2200
   San Francisco, CA 94105-1127
4  Telephone: (415) 957-3000
   Facsimile: (415) 957-3001
5  Email: roliner@duanemorris.com

6  Attorneys for Movant,
   POINT FINANCIAL, INC.
7

8                  **UNITED STATES BANKRUPTCY COURT**

9                   **NORTHERN DISTRICT OF CALIFORNIA**

10                          **SAN JOSE DIVISION**

11  In re                                  Case No. 24-51889 SLJ

12  CNEX LABS, INC.,                       Chapter 7

13                      Debtor.            R.S. No. DM-1

14                                         Date:    March 25, 2025
                                           Time:    10:00 a.m.
15                                         Place:   Hybrid Hearing[1]
                                                    280 South First Street
16                                                  Courtroom 10
                                                    San Jose, California 95113
17

18

19            <u>**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**</u>

20          Movant Point Financial, Inc. ("PFI") moves pursuant to 11 U.S.C. § 362(d)(1) and (2) for

21  entry of an order granting PFI relief from the automatic stay in the captioned case to allow PFI to

22  exercise any and all rights and remedies available under applicable law with respect to any and

23  all personal property of debtor CNEX Labs, Inc. ("Debtor") that serves as collateral for the

24  outstanding indebtedness the Debtor owes to PFI, regardless of where such personal property is

25  located, including but not limited to taking possession of the property, liquidating the property

26  and otherwise enforcing PFI's secured claim against the property.

27  ─────────────────
    [1] Please see the Notice of Hearing filed and served herewith for information on appearing at the hearing on
28  the Motion in person or remotely by video/telephone.

    DM3\11326082.1                            1

1       This motion ("Motion") is based upon the Declaration of Eric Koontz ("Koontz Decl.")

2   in support of the Motion and the exhibits thereto, the Relief from Stay Cover Sheet, and the

3   Notice of Hearing on the Motion, all of which have been filed and served concurrently herewith.

4   **I.      FACTUAL BACKGROUND**

5       1.      PFI loaned funds, and provided certain financial accommodations, to the Debtor

6   through, among other things, a lease of certain equipment to the Debtor.

7       2.      To secure payment of the Debtor's obligations to PFI, the Debtor granted to PFI a

8   first priority blanket lien ("Lien") on various categories of the Debtor's tangible and intangible

9   personal property (the "Property").

10      3.      The Lien secures the outstanding obligation that the Debtor owes to Secured

11  Creditor in the approximate amount of $34,576,432 (the "Obligation").

12      4.      The Lien and Obligation are evidenced by, among other things, an Equipment

13  Lease and exhibits thereto, a Security Agreement and amendments thereto, UCC1 financing

14  statements filed with the Delaware Secretary of State, and a Deposit Account Control Agreement

15  (collectively, the "Loan Documents").  See Koontz Decl., **Exhibits A – D**.

16      5.      The Debtor defaulted under the terms of the Security Agreement, as amended, by

17  failing to raise adequate funds by the deadlines set forth therein, entitling PFI to enforce its rights

18  and remedies under the terms of the Loan Documents and applicable law.

19      6.      On December 11, 2024, the Debtor filed a voluntary petition under chapter 7 of

20  the Bankruptcy Code, commencing the captioned bankruptcy case.

21      7.      In its sworn bankruptcy schedules, the Debtor scheduled Property as having a

22  value of $0.00.  See Doc #1 at pages 19-21 of 204.[2]

23  **II.     DISCUSSION**

24      PFI moves for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and (2) so

25  that PFI may exercise any and all rights and remedies available under applicable law with respect

26  to the Property, regardless of where the Property is located, including but not limited to taking

27  ---

28  [2] PFI respectfully requests that the Court take judicial notice of the Debtor's bankruptcy schedules, found at Doc# 1.

possession of the Property, liquidating the Property and otherwise enforcing PFI's secured claim against the Property.

### A. The Court Should Grant PFI Relief From Stay for "Cause" Under Section 362(d)(1).

Bankruptcy Code section 362(d)(1) provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section ... for cause, including the lack of adequate protection of an interest in property of such party in interest." Although the Bankruptcy Code does not define "cause" for relief from stay, it is determined on a case-by-case basis. In re Kronemyer, 405 B.R. 915, 921 (9th Cir. BAP 2009). Bankruptcy courts "generally ha[ve] broad discretion in granting relief from stay for cause under § 362(d)." In re Edwards, 454 B.R. 100, 107 (9th Cir. BAP 2011).

Here, there is ample cause to grant PFI relief from stay. The Debtor states in its schedules that (1) PFI is owed tens of millions of dollars, and (2) the value of PFI's collateral is "0.00". The Property, which is PFI's collateral, is of no value to the Debtor or the estate. Moreover, the Property, which includes tangible personal property, may be subject to loss. Accordingly, the Court should grant relief from stay for cause.

### B. The Court Should Grant PFI Relief From Stay Under Section 362(d)(2), As the Debtor Has No Equity In the Property and the Property Is Not Necessary To An Effective Reorganization.

Bankruptcy Code section 362(d)(2) provides that a court shall grant relief from the automatic stay if a debtor has no equity in the subject property and the property is not necessary to an effective reorganization.

#### 1. The Debtor has no equity in the Property.

The Debtor concedes in its schedules that it has no equity in the Property.

#### 2. The Property is Not Necessary to an Effective Reorganization.

The Property is not necessary to an effective reorganization because this case is a liquidation under chapter 7. See In re Prestwood, 185 B.R. 358, 361 (N.D. Ala. 1995) (finding that real property was not necessary to debtor's "effective reorganization" since "reorganization is not an issue" in a chapter 7 case); In re Kingsley, 161 B.R. 995, 997 (Bankr. W.D. Mo. 1994)

1    (finding that real property no longer necessary to an effective reorganization following

2    conversion to chapter 7).

3         Accordingly, the Court should grant relief from stay under section 362(d)(2) so that PFI

4    may exercise any and all rights and remedies available under applicable law with the respect to

5    the Property, wherever it is located.

6    **III.    CONCLUSION**

7         For all the foregoing and proper reasons, PFI respectfully requests that the Court grant

8    the instant Motion and enter an order as follows:

9         1.    Granting PFI relief from the automatic stay to exercise any and all rights and

10   remedies available under applicable law with respect to the Property, regardless of where the

11   Property is located, including but not limited to taking possession of the Property, liquidating the

12   Property and otherwise enforcing PFI's secured claim against the Property;

13        2.    Waiving the fourteen (14) day stay provided by Bankruptcy Rule 4001(a)(3);

14        3.    Providing that the order is binding and effective despite any conversion of this

15   bankruptcy case; and

16        4.    Granting such other relief as this Court deems appropriate.

17   Dated:  March 10, 2025                    **DUANE MORRIS LLP**

18

19                                            By: /s/ Aron M. Oliner (152373)
                                                  ARON M. OLINER

20
                                             Attorneys for Movant
21                                           POINT FINANCIAL, INC.

22

23

24

25

26

27

28

1 | Aron M. Oliner (SBN: 152373)
Geoffrey A. Heaton (SBN: 206990)
2 | **DUANE MORRIS LLP**
One Market Plaza
3 | Spear Street Tower, Suite 2200
San Francisco, CA 94105-1127
4 | Telephone: (415) 957-3000
Facsimile: (415) 957-3001
5 | Email: roliner@duanemorris.com

6 | Attorneys for Movant,
POINT FINANCIAL, INC.
7 |

8 | <center>UNITED STATES BANKRUPTCY COURT</center>

9 | <center>NORTHERN DISTRICT OF CALIFORNIA</center>

10 | <center>SAN JOSE DIVISION</center>

11 | In re

12 | CNEX LABS, INC.,

13 | Debtor.

Case No. 24-51889 SLJ

Chapter 7

R.S. No. DM-1

Date:     March 25____, 2025
Time:    10:00 a.m.
Place:    Hybrid Hearing
            280 South First Street
            Courtroom 10
            San Jose, California 95113

19 | <center>**DECLARATION OF ERIC KOONTZ IN SUPPORT OF
MOTION FOR RELIEF FROM THE AUTOMATIC STAY**</center>

21 | I, Eric Koontz, declare as follows:

22 | 1.      I am Chief Operating Officer and Vice President of Point Financial, Inc. ("PFI").

23 | If called upon to testify, I could and would competently do so as to the matters set forth herein

24 | based on personal knowledge.

25 | 2.      I have custody and control of the books and records maintained by PFI relating to

26 | the loan transaction described below.

27 |

28 |

DM3\11326554.2

3.    I make this declaration based upon the information contained in the records and documents which I have personally reviewed and which information I find such records and documents reflect. I state that the records and documents constitute writings taken or made in the regular and ordinary course of business of PFI at or near the time of the act, condition or event to which they relate. I further state from my own knowledge that any such record or document is prepared in the ordinary course of business of PFI by a person employed by PFI who had personal knowledge of the event being recorded and who had a business duty to PFI to record such event.

4.    PFI loaned funds and provided certain financial accommodations to debtor CNEX Labs, Inc. ("Debtor") through, among other things, a lease of certain equipment to the Debtor.

5.    To secure payment of the Debtor's obligations to PFI, the Debtor granted to PFI a first priority blanket lien ("Lien") on all of the Debtor's tangible and intangible personal property ("Property").

6.    The Lien secures the outstanding obligation that the Debtor owes to PFI in the approximate amount of $34,576,432 ("Obligation"). In November and December 2021, PFI funded $10,000,000 to Debtor as documented by the Loan Documents (described below). Due to Debtor showing signs that it was running out of cash, the original Loan Documents were amended in December 2021 and May 2022 to reflect an additional $20,000,000 preferred return to PFI's original funding. The final calculation of the Obligation is as follows:

| | |
|---|---|
| Lease balance: | $14,576,432 |
| Preferred Lease/Debt Return: | $20,000,000 |
| Total: | $34,576,432 |

7.    The Lien and Obligation are evidenced by, among other things, an Equipment Lease and exhibits thereto, a Security Agreement and amendments thereto, UCC1 financing statements filed with the Delaware Secretary of State, and a Deposit Account Control Agreement (collectively, the "Loan Documents"). True and correct copies of the foregoing documents are attached hereto as Exhibits A through D, respectively.

8.    The Debtor defaulted under the terms of the Security Agreement, as amended, by failing to raise adequate funds by the deadlines set forth therein as well as for stopping payments

1    on the equipment lease in April 2024, entitling PFI to enforce its rights and remedies under the

2    terms of the Loan Documents and applicable law.

3        I declare under penalty of perjury under the laws of the United States of America that the

4    foregoing is true and correct.

5        Executed this _10_ day of March 2025, at Phoenix, Arizona.

6

7

8                                        ERIC KOONTZ

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28